WAPPELHORST, APPELLEE, *v.* KIMMETT ET AL., APPELLANTS, ET AL.

(No. 1455—Decided April 19, 1972.)

Messrs. *Meredith, Meredith, Tait & Basinger,* and Mr. *David R. Kinworthy,* for defendants-appellants, Alt and Kimmett.

Messrs. *Dunbar, Kienzle & Murphy,* Mr. *David J. Young,* for plaintiff-appellee, Wappelhorst.

Messrs. *Cory, Boesel, Leonard & Cory,* and Mr. *William C. Leonard,* for defendant-appellee, Nevergall.

YOUNGER, P. J. This appeal arises from a judgment for $35,000 given to the plaintiff against the defendants Daniel E. Kimmett and Cynthia Alt as a result of a jury verdict. The common pleas court refused to direct a verdict for Kimmett and Alt at the close of all the testimony and also refused to render a verdict *non obstante veredicto* for such defendants. On the evening of August 31, 1966, the defendants, Daniel E. Kimmett and Cynthia Alt, were

30

driving the Alt automobile to the Kimmett home with Kimmett doing the driving. Both were under the age of 18 at the time. As they approached the Kimmett home they decided to change drivers. This was done by stopping their car on their right hand side of the road and by Cynthia Alt, who had been sitting on the right of Daniel E. Kimmett, rising in her seat and permitting Kimmett to slide across to the right side of the seat while she passed over him and took her place on the left behind the steering wheel. While this was taking place they heard the noise of a motorcycle which was driven by the plaintiff approaching them from the rear. The defendants maintained this position and the plaintiff did not slacken his motorcycle speed and contends he did not see the automobile until too close to slow down or stop and drove his motorcycle into the stopped automobile with such force that the front of the motorcycle was driven under the automobile and wedged thereunder so that it remained running and standing.

Plaintiff-appellee was thrown forward over the front of the motorcycle, struck the left rear fender of the automobile and was thrown to the left side of the automobile in the left lane of travel on the highway with his head approximately opposite the left front door of the stopped automobile and pointing in the direction in which the automobile was headed. The occupants of the automobile immediately got out on their respective sides and went to the rear of the automobile where Kimmett turned off the motorcycle where it was still standing and gave their attention to the plaintiff lying in the roadway. At this particular moment, automobile headlights were seen approaching from the opposite direction in which the stopped car was headed in the lane of traffic where plaintiff-appellee was lying. The defendants signaled the approaching car and it slowed down to approximately 5 or 6 miles per hour but proceeded to run into the plaintiff, who had his motorcycle helmet still on and dragged or pushed him some 30 feet before coming to a stop with plaintiff partly under the automobile. This automobile was driven by the defendant Nevergall. There is a dispute as to whether the lights of

the Alt automobile were lighted. The defendants claiming that they were and the plaintiff testified that while he was lying in the road before the other car approached he saw the lights of the Alt car come on. The plaintiff sustained very serious injuries.

At the trial, the plaintiff admitted running into the parked automobile and the court charged the jury that the plaintiff was guilty of contributiory negligence as a matter of law. The plaintiff's claim to recover from the defendants was on the ground that they were chargeable with wanton misconduct.

Two interrogatories were submitted to the jury. The first asking whether the defendants were guilty of wanton misconduct, to which the jury answered yes. The second interrogatory requested that if their answer to the first interrogatory was yes, to "state of what that wanton misconduct consisted." To this second interrogatory the jury answered:

"They stopped their vehicle in a position of probable harm to eastbound vehicles. They did not exercise caution or concern to signal said eastbound vehicles."

It should be stated here that the Alt automobile stopped in its traveled portion of the highway or country road headed east. The question, therefore, is whether or not the answer of the jury, giving it the interpretation most favorable to the plaintiff, states facts which under the conditions then and there existing constituted wanton misconduct.

In the case of *Roszman v. Sammett,* 26 Ohio St 2d 94, which is the latest pronouncement of the Supreme Court of Ohio on wanton misconduct, the Supreme Court said in the second paragraph of the syllabus, as follows:

"To constitute wanton misconduct justifying recovery, the conduct of the tort-feasor must be more than negligent: it must be such conduct with knowledge of a dangerous situation liable to cause injury to others, as manifests a heedless disregard for or indifference to the rights of others or for the consequences, i. e., such conduct as manifests a disposition to perversity. (Paragraph two of the

syllabus of *Universal Concrete Pipe Co.* v. *Bassett*, 130 Ohio St. 567, approved and followed; *Kellerman* v. *J. S. Durig Co.*, 176 Ohio St. 320, distinguished.)''

In its opinion, the Supreme Court further said at page 97:

''In order to establish wantonness, the conduct must be supported by evidence that shows a disposition to perversity, such as acts of stubborness, obstinacy or persistency in opposing that which is right, reasonable, correct or generally accepted as a course to follow in protecting the safety of others.''

This court of appeals had considerable trouble with the case of *Roszman* v. *Sammett* before it reached the Supreme Court of Ohio. See 20 Ohio App. 2d 255.

In this case, therefore, it becomes necessary to test the answer of the jury to the second interrogatory by the law as announced in the *Roszman* case and the second paragraph of the syllabus in the case of *Universal Concrete Pipe Co.* v. *Bassett,* 130 Ohio St. 567, which the Supreme Court approved and followed. Do the facts as stated in the answer constitute, in law, wanton misconduct? If they do not, the verdict of the jury cannot be upheld as such verdict would then be supported only by negligence. This court is of the opinion that the facts stated by the jury in its answer constitute only negligence. If the defendants stopped their vehicle in a position of probable harm, that constituted negligence by a positive act. If they did not exercise caution or concern, that conduct was negligence in a negative manner.

In this case the plaintiff was eviscerated. The gouge in his abdomen was so large that the surgeon operated on his kidneys, liver and gall bladder without enlarging it. However, unfortunately for the plaintiff, neither size of the wound nor the severity of the injuries can transform negligence into wanton misconduct.

The jury also returned a verdict, in favor of defendant Nevergall and against the plaintiff, of ''no cause of action.'' As to these two individuals in this case, the plaintiff and defendant Nevergall, the rules of negli-

gence and contributory negligence apply. There is no proof of wanton misconduct. A reading of the entire bill of exceptions consisting of some 575 pages discloses that there is sufficient evidence of probative value either that Nevergall was not guilty of negligence or that the plaintiff was guilty of contributory negligence. Therefore, the finding of the jury for defendant Nevergall of "no cause of action" must be affirmed.

On the basis of the reasoning in the above portion of this opinion, it is apparent that assignments of error two (insofar as it pertains to the close of all the evidence), four, six, seven and eight are well taken and sustained.

Assignment of error number one complains that plaintiff, in his opening statement, used blown up photographs of the scene of the accident and of the autos involved. The statute, R. C. 2315.01, simply states:

"(A) The plaintiff concisely must state his claim and briefly may state his evidence to sustain it."

In *Hatsio* v. *Red Cab Co.*, 77 Ohio App. 301, the Court of Appeals for Lucas County said in the second paragraph of the syllabus:

"The range or amplitude of opening statements is definitely limited [by R. C. 2315.01] * * * and failure of counsel to observe those provisions to the prejudice of the party complaining is reversible error."

We are of the opinion that the use of blown up photographs some three feet square and which were not subsequently identified or introduced was erroneous.

The third assignment of error concerns the testimony of Dr. Oppenheim, an expert witness called by defendant Nevergall. While much of the testimony complained of was not objected to when given, most of his testimony was based upon facts stated in the hypothetical questions and the natural inferences therefrom and we do not find any prejudicial error therein.

The fifth assignment of error is that the trial court refused to instruct the jury that wanton misconduct was such conduct "as manifests a disposition to perversity." Although such language is frequently used by the courts,

it is not exclusive and other suitable language can be used. This assignment of error is not well taken.

The verdict of the jury finding for the plaintiff of damages in the sum of $35,000 against Kimmett and Alt must be reversed and this court, rendering the judgment which the trial court should have rendered, orders a finding for the defendants Alt and Kimmett of "no cause of action."

*Judgment reversed in part and affirmed in part.*

GUERNSEY, J., concurs.

GUERNSEY, J., concurring. I concur in Judge Younger's opinion. However, I wish to also observe that notwithstanding that the plaintiff's contributory negligence may not, as such, have been available to the defendant as a defense to a charge of wanton misconduct, nevertheless, the plaintiff admitted that his conduct was such as to constitute his own negligence in operating his vehicle at such speed that he was unable to stop same within the assured clear distance ahead. By operation of law the plaintiff admits, therefore, that the car with which he collided was a discernible object in his lane of travel. The plaintiff further claiming that the car was unlighted until after the collision he necessarily thereby admits that it was discernible without lights. Being discernible without lights there could be no further duty owed to the plaintiff by the defendants Kimmett and Alt to give warning of its presence by lights or otherwise. The only other conduct of Kimmett and Alt complained of by plaintiff is a violation of the parking statute. If a violation, this merely constitutes negligence per se which would not be actionable in the face of plaintiff's contributory negligence. A single statutory violation which in itself merely constitutes negligence per se cannot constitute wanton misconduct. Combined derelictions may constitute wanton misconduct if they also show a reckless and inexcusable disregard of the rights and protection of others. See *Kellerman* v. *Durig Co.*, 176 Ohio

St. 320, 324, and note the distinctions set forth in *Roszman* v. *Sammett*, 26 Ohio St. 2d 94.

I would observe, too, that the definition of wanton misconduct used by the trial judge in his charge to the jury is probably based on a definition thereof appearing in *Reserve Trucking Co.* v. *Fairchild*, 128 Ohio St. 519, 531. This definition was modified in the second paragraph of the syllabus in *Universal Concrete Pipe Co.* v. *Bassett*, 130 Ohio St. 567, by adding thereto the phrase "a disposition to perversity." See *Kellerman* v. *Durig Co., supra,* at page 323. It would seem that in Ohio, after the *Universal Concrete* decision, that the definition must include the phrase "a disposition to perversity," as used conjunctively in the second paragraph of the syllabus in the *Kellerman* case. However, the most recent pronouncement by the Supreme Court as to such definition is that contained in the second paragraph to the syllabus in the *Roszman* case, *supra*, which distinguishes the *Kellerman* case and follows the *Universal Concrete* case and uses the phrase "such conduct as manifests a disposition to perversity" as an alternative to, or as an equivalent of, language substantially equivalent to the language used here by the trial court in its definition. Except for the *Roszman* case I would have held the trial court's decision incomplete.

With regard to the first assignment of error it should be noted that an opening statement is the vehicle by which a litigant presents to the jury in a brief fashion what he intends to prove and it does not constitute the proof thereof. It is no more proper in connection with an opening statement to bring before the jury demonstrative or real evidence consisting of photographs of an accident scene than it would be proper in a murder case to display the murder weapon, or in this case to have had the plaintiff display to the jury his abdominal incisions.

COLE, J., concurs in the foregoing opinions.