[Cite as *In re Anderson*, 2012-Ohio-4681.]



# Court of Claims of Ohio
## Victims of Crime Division

The Ohio Judicial Center
65 South Front Street, Fourth Floor
Columbus, OH 43215
614.387.9860 or 1.800.824.8263
www.cco.state.oh.us

IN RE: MICHAEL K. ANDERSON

LISA B. JACKSON

AUDREY D. MC CLAIN

ANITA L. MCMILLION

DEBORAH PEAKS

LISA E. ROYSTER

      Applicants
Case No. V2011-60280

Commissioners:
Necol Russell-Washington, Presiding
Susan G. Sheridan
E. Joel Wesp

ORDER OF A THREE-COMMISSIONER PANEL

{¶1} On September 27, 2010, the applicants filed a compensation application as the result of the death of Michael Anderson. On January 11, 2011, the Attorney General issued a finding of fact and decision denying the applicants' claim since Michael Anderson's death was not the result of criminally injurious conduct. On February 11, 2011, the applicants submitted a request for reconsideration. On February 22, 2011, the Attorney General rendered a Final Decision finding no reason to modify the initial decision. On March 24, 2011, applicant, Lisa Royster, filed a notice of appeal from the February 22, 2011 Final Decision of the Attorney General. Hence, a hearing was held before this panel of commissioners on February 8, 2012 at 10:40 A.M.

{¶2} Applicants Deborah Peaks, Lisa Royster, and Anita McMillion along with their attorney Philip Sheridan, Jr. attended the hearing, while Assistant Attorneys General David Lockshaw and Gwynn Kinsel represented the state of Ohio.

{¶3} Prior to the commencement of the hearing Commissioner Wesp informed the parties that upon review of the claim file he noted that the applicants had contacted the

{¶4} Justice League of Ohio for assistance. The point of contact person was Quinn Schmiege, who subsequently left the Justice League and became an associate with the Commissioner's law firm. Commissioner Wesp assured the parties that he has never had any discussion with Ms. Schmiege concerning the applicants' case. Upon disclosure to the parties no objection was raised regarding Commissioner Wesp's participation in this hearing.

{¶5} The applicants, in opening statement, assert that the offender, Lydia Howard, pushed Mr. Anderson out of the door of her apartment, knowing he was intoxicated and unsteady on his feet. The decedent was unable to regain his balance and fell down the stairs which caused Mr. Anderson's subsequent injury and death. Accordingly, Lydia Howard caused Mr. Anderson to fall down the stairs and based upon the circumstances her conduct was reckless.

{¶6} The Attorney General contended that Mr. Anderson's death was investigated by the Columbus Police Department, the Franklin County Prosecutor's Office, and the Franklin County Coroner all of whom concluded that there was insufficient evidence to proceed to the Grand Jury. The incident was characterized as a fall. The applicants have failed to prove, by a preponderance of the evidence, that Mr. Anderson was a victim of criminally injurious conduct.

{¶7} The applicants called Elijah Anderson, Jr. to the witness stand. Elijah Anderson stated he was the older brother of Michael Anderson. Elijah stated that Michael had lived with him for approximately one year. He was aware that Michael had a drinking problem.

{¶8} Elijah related for a period of about three or four months both Michael and Lydia Howard resided with him. During that time, he observed numerous confrontations and altercations between the two, fueled by alcohol. Consequently he ordered Lydia to leave his home. Elijah testified based on past observations, he understood that Lydia Howard was well aware that Michael was unsteady on his feet when he had been drinking.

{¶9} Elijah related that he received two telephone calls from Lydia in the early hours of the morning following the day of the incident. He asserted he received a call at approximately 1:00 A.M. from Lydia inquiring where Michael was, since she was unable to locate him. Sometime later a call was received but due to Elijah being asleep the call went to voice mail. Elijah disclosed upon listening to the voice mail Lydia admitted pushing Michael out the door, his equilibrium "was messed up" and he fell down the stairs.

{¶10} Upon cross-examination, Elijah Anderson admitted he was not present at the time of the fall. Upon inquiry by the panel of commissioners, Elijah Anderson stated he did not notify the police concerning the voice mail message on the day he received it, however, at a later date he did inform the police and they made a copy of the message. Whereupon, the testimony of Elijah Anderson was concluded.

{¶11} Applicant Lisa Royster was called to testify. Michael Anderson was Lisa's youngest brother. Lisa stated she was notified of Michael's hospitalization by her sister Deborah Peaks. Lisa asserts she had three telephone conversations with Lydia Howard concerning the incident. She asserts Lydia, in the first conversation, admitted pushing Michael which resulted in him falling down the stairs, however, in the two subsequent telephone conversations she denied pushing Michael.

{¶12} Upon cross-examination Ms. Royster admitted she was not present at the time of the fall. Whereupon, the witness was excused.

{¶13} The panel listened to a taped interview of Tashauna Howard conducted by the Columbus Police concerning the incident of July 18, 2010 involving Michael Anderson.

{¶14} The applicants contend that the statements of Columbus Detective Althea Young concerning the cause of Mr. Anderson's fall contradict the recollection of Tashauna Howard on the taped interview. The applicants drew the panel's attention to the taped recording of Tashauna Howard at 3:17, wherein she stated: "mom pushed him out the door and he hit the other door stumbled over his feet passed her on the landing stumbled down the steps and fell from about the sixth step." At 4:47 on the tape, Tashauna stated: "he didn't fully catch his balance before he went down the steps." Applicants assert that recollection was directly in conflict with the written statement of Detective Young. The applicant points out that the stair case was not well maintained and no hand railing was present.

{¶15} The applicants assert the panel should discount Lydia Howard's statement that she never pushed him. The other witness to the incident, Tashauna Howard, admits that in fact her mother did push Michael Anderson.

{¶16} Next, the applicants refer the panel to Tapes #1 and #10, identical tapes of telephone calls received from Lydia Howard to Elijah Anderson. The tape at 3:21 reveals Lydia Howard stated she "shoved him out the door," at 4:44, "he f... up out the door," and 3:40 "I shoved him out the door."

{¶17} The applicants contend sufficient evidence is present to establish by a preponderance of the evidence that Michael Anderson was a victim of criminally injurious conduct. The applicants argue that Lydia Howard should be responsible for her actions. In this case her actions of pushing a known intoxicated individual out her door near a poorly maintained staircase constitutes recklessness.

{¶18} Finally, the applicants direct the panel's attention to *State v. Hill*, 2011-Ohio-5810, where a mother was found reckless for injuring her child with the use of bleach and a hot spoon, a home remedy, to cure ringworm, and notes that drag racing is considered reckless. The applicants contend that Lydia Howard's actions were reckless and it was foreseeable that Michael Anderson would fall down the stairs as the result of her actions.

{¶19} The Attorney General chronicled that law enforcement did a thorough investigation concerning the death of Michael Anderson. The facts were submitted to the Franklin County Prosecutor's Office which determined no crime had occurred. Furthermore, the Attorney General argues that on the taped interview with Tashauna Howard she recounts that Mr. Anderson regained his balance before ultimately falling down the stairs. Finally, Mr. Anderson's voluntary intoxication was causally related to his fall. The Attorney General requests that the final decision be affirmed. Whereupon, the hearing was concluded.

{¶20} R.C. 2743.51(C)(1) in pertinent part states:

    a.    "(C) 'Criminally injurious conduct' means one of the following: (1) For the purposes of any person described in division (A)(1) of this section, any conduct that occurs or is attempted in this state; poses a substantial threat of personal injury or death; and is punishable by fine, imprisonment, or death, or would be so punishable but for the fact that the person engaging in the conduct lacked capacity to commit the crime under the laws of this state."

{¶21} The applicant must prove criminally injurious conduct by a preponderance of the evidence. *In re Rios* (1983), 8 Ohio Misc. 2d 4.

{¶22} "R.C. 2901.22(C) defines the culpable mental state of 'recklessly' as follows:

    a.    "(C) A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."

{¶23} Further, the Committee Comment to H.B. No. 511, which established the definition of 'culpable mental state' pursuant to R.C. 2901.22, effective January 1, 1974, provides, in pertinent part, the following: "A person is said to be reckless under the

section when, without caring about the consequences, he obstinately disregards a known and significant possibility that his conduct is likely to cause a certain result or be of a certain nature, or that certain circumstances are likely to exist. In substance, the definition follows the definition of recklessness found in *Roszman v. Sammett*, 26 Ohio St.2d 94, 55 O.O.2d, 165, 269 N.E.2d 420 (1971)."

{¶24} "As stated in *Roszman*, the burden of proof is upon the plaintiff (applicant) to show wanton (reckless) misconduct on the part of defendant's (offender's) driver. Further, that 'proof must be of a nature that shows all absence of care or an absolute perverse indifference to the safety of others, knowing of a dangerous situation, yet failing to use ordinary care to avoid injury to others.' *Roszman*, 26 Ohio St.2d at 98, 55 O.O.2d 167, 269 N.E.2d 423." *In re Calhoun*, V92-54871jud (9-12-94), 66 Ohio Misc. 2d 159, 161-162.

{¶25} Black's Law Dictionary Sixth Edition (1990) defines preponderance of the evidence as: "evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it; that is, evidence which as a whole shows that the fact sought to be proved is more probable than not."

{¶26} Black's Law Dictionary Sixth Edition (1990) defines burden of proof as: "the necessity or duty of affirmatively proving a fact or facts in dispute on an issue raised

{¶27} between the parties in a cause. The obligation of a party to establish by evidence a requisite degree of belief concerning a fact in the mind of the trier of fact or the court." Plaintiff must produce evidence which furnishes a reasonable basis for sustaining his claim. If his evidence furnishes for only a guess, among different possibilities, as to any essential issue in the case, he fails to sustain the burden as to such issue. *Landon v. Lee Motors, Inc.* (1954), 161 Ohio St. 82, 53 O.O. 25, 118 N.E. 2d 147. In order to establish that the decedent was a victim of criminally injurious conduct, the applicants have the burden to prove by a preponderance of the evidence that: 1) the criminal conduct occurred or was attempted; 2) the criminal conduct posed a

substantial threat of personal injury or death; and 3) the criminal conduct was punishable by fine; imprisonment or death.   *In re Gradison*, V78-3385jud (1-13-82).

{¶28} Upon review of the case file and with full and careful consideration given to the testimony presented at the hearing, the audio tapes, and the arguments of the parties, we find the applicants have failed to prove by a preponderance of the evidence that Michael Anderson's injuries and subsequent death were the result of criminally injurious conduct.

{¶29} There is no doubt that Michael Anderson and Lydia Howard had a contentious relationship fueled by abuse of alcohol.   However, there is insufficient evidence contained in the case file or presented at the hearing to satisfy the applicants' burden of proof.   A review of the totality of the statement the witness Tashauna Howard gave to police reveals that although Michael was initially pushed out the door by Lydia, he regained his balance and proceeded down the staircase until he stumbled and fell on the sixth step.   While Lydia's actions were negligent they did not rise to the level of recklessness.   No testimony was offered to support the contention that Lydia pushed Michael down the steps.   Tashauna's statement reveals that Lydia pushed him out of her apartment into an adjoining apartment's door.   Furthermore, Michael was extremely intoxicated at the time of the incident, having a blood alcohol level of 0.367.   Michael's intoxication was causally related to his fall.

{¶30} Accordingly, the Attorney General's Final Decision of February 22, 2011 is affirmed, since the applicants have failed to meet their burden of proof to establish that Michael Anderson's death was the result of criminally injurious conduct.

{¶31} IT IS THEREFORE ORDERED THAT

{¶32} The February 22, 2011 decision of the Attorney General is AFFIRMED;

{¶33} This claim is DENIED and judgment is rendered in favor of the state of Ohio;

{¶34} Costs are assumed by the court of claims victims of crime fund.

_____
NECOL RUSSELL-WASHINGTON
Presiding Commissioner


_____
SUSAN G. SHERIDAN
Commissioner


_____
E. JOEL WESP
Commissioner

ID #I:\Victim Decisions to SC Reporter\Panel Decisions\2012\March - May 2012\V2011-60280 Anderson.wpd\DRB-tad

A copy of the foregoing was personally served upon the Attorney General and sent by regular mail to Franklin County Prosecuting Attorney and to:

Filed 4-6-12
Jr. Vol. 2282, Pgs. 170-177
Sent to S.C. reporter 10-9-12